IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

JAMES EDWARD DEMPSTER,

               Petitioner,

    v.

SHAWN SALMONSON,

               Respondent.

Case No. 3:25-cv-00490-AN

OPINION AND ORDER

James Edward Dempster
13242-046
FCI SHERIDAN
P.O. Box 5000
Sheridan, OR 97378

               Petitioner, *Pro Se*

Scott E. Bradford
United States Attorney
Joshua Keller, Assistant United States Attorney
1000 SW Third Avenue, Suite 600
Portland, OR 97204-2902

               Attorneys for Respondent

1 - OPINION AND ORDER

NELSON, District Judge.

Petitioner brings this habeas corpus case pursuant to 28 U.S.C. § 2241 challenging the Bureau of Prisons' ("BOP's") calculation of his Prisoner Assessment Tool Targeting Estimated Risk and Needs ("PATTERN") score. For the reasons that follow, the Petition for Writ of Habeas Corpus (#1) is denied.

## **BACKGROUND**

Petitioner is incarcerated at FCI-Sheridan serving a 46-month sentence for being a Prohibited Person in Possession of a Firearm in violation of 18 U.S.C. § 922(g)(1). He brings this habeas corpus case alleging that the BOP miscalculated his PATTERN score by construing his 18 U.S.C. § 922(g)(1) conviction as a crime of violence which, Petitioner contends, it is not. He states that this is precluding him from benefiting from earned time credits he has accrued under the First Step Act ("FSA"), and he asks the Court to direct Respondent to recalculate his PATTERN score and apply his earned FSA time credits accordingly. Respondent asks the Court to deny relief on the Petition because: (1) pursuant to 18 U.S.C. § 3625, the Court lacks jurisdiction over the Petition; (2) Petitioner failed to exhaust his administrative remedies; and (3) the BOP correctly coded Petitioner as ineligible for FSA earned time credits due to his risk of recidivism.

## **DISCUSSION**

The FSA, which Congress enacted on December 21, 2018, incentivizes prisoners to complete evidence-based recidivism reduction programs in exchange for awards, including earned time credits prisoners can utilize to accelerate their release from prison to prerelease custody, or to accelerate the termination of their supervised release. *Gonzalez v. Herrera*, --- F.4th ---, 2025 WL 2396495 (9th Cir. Aug. 19, 2025). Passage of the FSA required the BOP to create an

2 - OPINION AND ORDER

assessment system that evaluates the risk and needs of each federal prisoner, determine the recidivism risk for each prisoner, and classify each prisoner as posing a minimum, low, medium, or high risk of recidivism. 18 U.S.C. §§ 3631, 3632(a). In order to satisfy that requirement, the BOP developed its PATTERN scoring system.

All federal AICs who are not serving a sentence for a disqualifying offense under 18 U.S.C. § 3632(d)(4)(D) are eligible to earn FSA time credits provided they complete eligible recidivism reduction programs. However, not all AICs can apply their earned time credits to their sentences. Only prisoners who are designated as either minimum or low risk of recidivism by virtue of their PATTERN score are eligible to apply their earned FSA time credits toward early release from prison to prerelease custody or supervised release. 18 U.S.C. §§ 3632(d)(4)(A), 3632(d)(5); 28 CFR § 523.542. Prisoners deemed to pose a medium or high risk of recidivism are excluded from utilizing any earned FSA time credits until they achieve a low or minimum PATTERN score. 18 U.S.C. §§ 3624(g), 3632(d)(5); CFR 523.544.

In this case, Petitioner had accrued 260 days of time credits under the FSA at the time Respondent filed the Response in this case. *See* Declaration of Neha Khan, ¶ 11. He cannot, however, utilize these credits because the BOP classified him as: (1) a high risk AIC in its first four assessments conducted between February 20, 2023 and September 10, 2024; and (2) a medium risk AIC during its most recent PATTERN assessments conducted on March 14, 2024 and March 9, 2025, respectively. *Id.* at ¶ 13. Thus, despite earning a substantial number of FSA time credits, he remains ineligible to apply them to his sentence.

Petitioner takes issue with his PATTERN classification, arguing that his § 922(g)(a) conviction firearm conviction should not be considered a crime of violence.[1] The BOP's determinations as to Petitioner's PATTERN score and his resulting present inability to apply earned time credits to prerelease custody or supervised release are governed by 18 U.S.C. § 3621(h) and § 3624(g), respectively. In 18 U.S.C. § 3625, Congress prohibited judicial review of BOP decisions made under these statutes. *See Reeb v. Thomas*, 636 F.3d 1224 (9th Cir. 2011); *see also Woods v. Warden,* 2:24-cv-02181-LK, 2025 WL 1207663 (W.D. Wash. April 25, 2025) (adopting report and recommendation finding no jurisdiction to review a claim that the BOP miscalculated PATTERN score and incorrectly assessed recidivism risk); *Monsevaiz v. Doerer,* No. 2:24-cv-09925, 2025 WL 808233 (C.D. Cal. Mar. 12, 2025) (adopting report and recommendation finding federal courts have no jurisdiction to review BOP FSA eligibility determinations). As a result, Petitioner's challenge to the BOP's individualized determination of his PATTERN score is not cognizable.

Although the Court lacks jurisdiction over the BOP's individualized determination of Petitioner's PATTERN score, "judicial review remains available for allegations that BOP action is contrary to established federal law, violates the United States Constitution, or exceeds its statutory authority. . . ." *Reeb*, 636 F.3d at 1228. Petitioner contends that the BOP has misconstrued § 922(g) convictions as crimes of violence and is, thus, systematically depriving prisoners like him of the ability to apply earned FSA time credits. He relies upon *United States v. Taylor,* 142 S.Ct.

---

[1] Petitioner also asserts that nothing else in his criminal history establishes a predilection toward violence that would justify his elevated PATTERN score. Because the BOP informed him that the sole reason for the elevated PATTERN score is his § 922(g)(1) firearms offense, the Court need not address any issues from his other criminal history. *See* Khan Declaration, Exhibit 2 (#9-3) (BP-10 Regional Office denial of administrative relief based upon the § 922(g)(1) conviction.

2015 (2022), to support his contention. This claim does not entitle Petitioner to relief for two reasons.

First, he has not fully exhausted his administrative remedies. Prior to applying for habeas corpus relief pursuant to 28 U.S.C. § 2241, a habeas petitioner "must first, 'as a prudential matter,' exhaust his or her available administrative remedies." *Singh v. Napolitano,* 649 F.3d 899, 900 (9th Cir. 2010) (per curiam). Use of available administrative remedies conserves "the court's time because of the possibility that the relief applied for may be granted at the administrative level." *Ruviwat v. Smith*, 701 F.2d 844, 845 (9th Cir. 1983). *Id.* Moreover, it allows "the administrative agency an opportunity to correct errors occurring in the course of administrative proceedings." *Id*; *United Farm Workers v. Arizona Agric. Employ. Relations Bd.*, 669 F.2d 1249, 1253 (9th Cir. 1982).

The BOP maintains an administrative review process for prisoners that begins with an informal grievance, or BP-8. If an AIC does not achieve satisfactory results from that informal process, he may file a formal complaint with the warden using a BP-9 form. If the BP-9 is unsuccessful, the prisoner can file a Regional Administrative Remedy Appeal (BP-10). Finally, if the BP-10 does not lead to relief the AIC finds to be satisfactory, he can file a Central Office Administrative Remedy Appeal (BP-11). *See* 28 C.F.R. §§ 542.13-542.15. If the BOP denies relief on the BP-11, the prisoner has exhausted his administrative remedies and may file for judicial relief.

In this case, Petitioner initiated the administrative review process, and proceeded with that process through the filing of a BP-10. He did not, however, file a BP-11 with the Central Office. *See* Khan Declaration, ¶¶ 6-7, Exhibit 2. Petitioner asserts that he did not receive timely responses

to his BP-9 and BP-10 submissions,[2] but any lack of a timely response did not prevent him from filing a BP-11 with the Central Office. *See* 28 C.F.R. § 542.18 ("If the inmate does not receive a response within the time allotted for reply, including extension, the inmate may consider the absence of a response to be a denial at that level."). Based upon the rejections he ultimately received with regard to his BP-8, BP-9, and BP-10, he assumes that he would not have received a satisfactory response had he filed the required BP-11. He has not, however, shown how completing exhaustion would result in undue prejudice, and the Court is reluctant to allow an AIC to unilaterally curtail the BOP's administrative review process without making such a showing to at least some degree.

Not only has Petitioner failed to establish that completing the BOP's remedial administrative process would cause him undue prejudice, but allowing prisoners in this situation to forego structured exhaustion requirements would encourage the deliberate bypass of a system they are required to utilize prior to filing in federal court. *See Pugo v. Chertoff,* 488 F.3d 812, 815 (9th Cir. 2007) (exhaustion may be required where relaxation of the requirement would encourage the deliberate bypass of the administrative scheme). As the Supreme Court has said, although "some aggrieved parties may prefer to proceed directly to federal court[,]" an AIC's "proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules because no adjudicative system can function effectively without imposing some orderly structure on the course of its proceedings." *Woodford v. Ngo*, 548 U.S. 81, 89, 90-91 (2006). This "means

---

[2] The record shows that Petitioner signed his BP-10 on February 10, 2025 but it was not received by the Regional Office until April 10, 2025. Khan Declaration Exhibit 3 (#9-3), pp. 2-3. The Regional Office issued its decision three days later. *Id.* at 3. It is unclear why it took two months to transmit the administrative appeal to the Regional Office.

using all steps that the agency holds out, and doing so *properly* (so that the agency addresses the issues on the merits)." *Id* at 90 (emphasis in original) (quotation omitted).

Even if Petitioner had fully exhausted his administrative remedies by filing a BP-11, or if the Court were to excuse his failure to file a BP-11, his reliance upon *Taylor* is misplaced. The BOP advised Petitioner in its response to his BP-10 administrative appeal request, "the scored violence on the PATTERN was for [his] instant offense as U.S.C. 922 is a 'violent' offense code to be used as violent on your PATTERN score." Khan Declaration, Exhibit 3 (#9-3), p. 2; *see also* Violent Offense Codes for PATTERN Risk Assessment, available at https://www.bop.gov/inmates/fsa/docs/fsa_pattern_violent_offense_codes.pdf (listing 18 U.S.C. §§ 922-924 among violent firearms offenses for PATTERN risk assessment). *Taylor* did not address any determination of an AIC's PATTERN score or the decision to withhold application of earned FSA credits. Instead, it involved an interpretation of attempted Hobbs Act robbery for purposes of a sentencing enhancement under the Armed Career Criminal Act. *See Taylor,* 142 S.Ct. at 2021 ("attempted Hobbs Act robbery does not qualify as a crime of violence under the elements clause").

While the BOP does not have discretion to deny a prisoner application of earned FSA credits for which it has already determined him to be eligible, *Martin v. Phillips,* No. 2:25-cv-00687-DJC-AC, 2025 WL 732829, at *4 (E.D. Ca.. Mar. 7, 2025), it retains discretion to determine which AICs meet the PATTERN eligibility standards for minimum and low risk designations, including defining what constitutes a violent offense. *See, e.g., Green v. Hudson,* 2024 WL 960497, at *2 (10th Cir. 2024) (the BOP "had discretion to consider unlawful possession of a firearm as *violent* when assessing the risk of recidivism) (emphasis in original); *Godbee v.*

*Graham*, No. 24-cv-0702, 2024 WL 5323825, at *5 (D.S.C. Nov. 14, 2024) ("the BOP's creation of its own definition for a 'crime of violence' under the FSA is well within the agency's authority."); *Sampson v. Lillard,* No. 23-cv-01972-RJD, 2024 4040350, at *3 (S.D. Ill. Sept. 4, 2024) (the FSA gives the Attorney General discretion in assessing an AIC's risk level). Petitioner's disagreement with the BOP's discretionary determination on this issue does not entitle him to habeas corpus relief.

## **CONCLUSION**

For the reasons identified above, the Petition for Writ of Habeas Corpus (#1) is denied.

IT IS SO ORDERED.

_____
9/10/2025
DATE

_____
Adrienne Nelson
United States District Judge

8 - OPINION AND ORDER